OPINION
{¶ 1} Appellant Lori Rock appeals from the November 2, 2004, Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant's minor biological daughter, Brittany, to the Stark County Department of Jobs and Family Services [hereinafter SCDJFS]. Appellee is SCDJFS.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Lori Rock is the biological mother of Brittany Rock (dob 6/21/92). On October 25, 2002, SCDJFS filed a complaint alleging that Brittany and her sister, who is now of majority age, were dependent, neglected and/or abused children. An emergency shelter care hearing was held on October 28, 2002. After accepting stipulations of both the mother (appellant) and the father, the trial court found probable cause to place both children into the emergency temporary custody of SCDJFS and to issue pre-adjudicatory orders requiring the parents to submit to various evaluations and assessments. By Judgment Entry filed on January 10, 2003, Brittany was adjudicated a dependent child and was placed in the temporary custody of SCDJFS.
 {¶ 3} The record shows that a review of this matter was conducted on April 17, 2003, at which time SCDJFS made on oral motion to return the children to appellant's custody subject to SCDJFS' protective supervision. See Affidavit of Cheri Vandeborne, SCDJFS. The trial court denied the request due to a lack of notice to the father. However, the children went home with appellant on an extended visit. While SCDJFS was preparing an agreed entry to return the children to appellant's custody, a SCDJFS case worker went to appellant's residence and found appellant "severely impaired and under the influence of controlled substances." Id. A subsequent urinalysis tested positive for benzodiazepines and cocaine. Upon motion of SCDJFS, the father and appellant stipulated to the removal of the children from appellant's residence. By Judgment Entry filed on May 12, 2003, the trial court ordered that the children be removed from appellant's residence and that the children remain in the custody of SCDJFS. Further, the trial court ordered that appellant submit to drug testing and counseling.
 {¶ 4} Based upon SCDJFS' recommendation, on October 14, 2003, the trial court began re-integrating Brittany into appellant's care and control. By Judgment Entry filed on October 16, 2003, the trial court ordered that Brittany would have companionship with appellant over certain weekends and all holidays. However, appellant tested positive for cocaine again. By Judgment Entry filed on November 18, 2003, the trial court ordered that appellant's visitation with Brittany be limited to two hours once every other week and that the visitations be supervised.
 {¶ 5} On July 6, 2004, Brittany was returned to appellant's custody when SCDJFS agreed to return custody of Brittany to appellant, under the protective supervision of SCDJFS. Brittany remained in appellant's custody subject to SCDJFS protective supervision until July 27, 2004, when SCDJFS obtained an ex parte postdispositional order for temporary custody. SCDJFS based the motion upon receiving notice that appellant had tested positive for cocaine again.
 {¶ 6} On September 24, 2004, SCDJFS filed a motion for permanent custody. A hearing regarding that motion was held on October 26, 2004. At that hearing, appellant signed a stipulation form thereby stipulating that she was voluntarily surrendering her parental rights. In addition, after the stipulation was entered, appellant read a lengthy statement into the record. The trial court then conducted a best interest hearing. Appellant was permitted to stay and participate in the hearing.
 {¶ 7} On November 2, 2004, the trial court filed a Judgment Entry and Findings of Fact and Conclusions of Law in which it granted SCDJFS' motion for permanent custody and terminated appellant's parental rights.
 {¶ 8} It is from the November 2, 2004, Judgment Entry that appellant appeals raising the following two assignments of error:
 {¶ 9} "I. The record does not reflect that appellant voluntarily and knowingly stipulated to a finding of permanent custody as required pursuant to juvenile rule 29(d), thereby violating appellant's due process rights.
 {¶ 10} "II. The judgment of the trial court that the best interests of the minor child would be served by granting permanent custody to scdjfs was against the manifest weight and sufficiency of the evidence."
 I {¶ 11} In the first assigned error, appellant maintains that her stipulation agreeing that her parental rights be permanently terminated and that permanent custody be awarded to the SCDJFS was not voluntary and knowing, as required by Juv.R. 29(D), thereby violating her due process rights. We agree.
 {¶ 12} This court has previously stated that a trial court must comply with Juv. R. 29(D) when accepting a party's stipulation to permanent custody. See In re Foresha/Kinkel Children, Stark App. No. 2003CA00364, 2004-Ohio-578. Juvenile Rule 29(D), provides as follows:
 {¶ 13} "The Court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:
 {¶ 14} "(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;
 {¶ 15} "(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing."
 {¶ 16} In order to satisfy the requirements of this Rule, the trial court must address the party personally and conduct an "on the record" discussion to determine whether the admission is being entered knowingly and voluntarily. In Re: West (1998), 128 Ohio App.3d 356, 359,714 N.E.2d 988. If there is substantial compliance with the mandates of the Rule, the acceptance of the admission should not be disturbed on appeal. Id. Substantial compliance means that the party adequately understood her rights and the effect of her admission. State v. Nero
(1990), 56 Ohio St.3d 106, 108, 564 N.E.2d 474.
 {¶ 17} "In a case where parental rights are permanently terminated, it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow." Elmer v. Lucas Cty. Children Serv. Bd.
(1987), 36 Ohio App.3d 241, 245, 523 N.E.2d 540, 544; See, also,Stanley v. Illinois (1972), 405 U.S. 645, 651. "The rights to conceive and to raise one's children have been deemed `essential, . . . basic civil rights of man,' . . . and `[r]ights far more precious . . . than property rights.'" (Citations omitted.) Stanley v. Illinois, supra at 651, 92 S.Ct. at 1212, 31 L.Ed.2d at 558. A termination of parental rights is the family law equivalent of the death penalty in a criminal case. The parties to such an action must be afforded every procedural and substantive protection the law allows.
 {¶ 18} In this case, the trial court engaged appellant and her counsel in the following dialog regarding appellant's understanding of the proceedings and her willingness to voluntarily surrender her parental rights:
 {¶ 19} "By the Court: Mr. O'Byrne [appellant's counsel], I have in front of me a duly executed parental stipulation to permanent custody by your client dated today's date, October 26th, '04. You have gone over this with your client?
 {¶ 20} "By Mr. O'Byrne: Yes sir, Your Honor, before court today I had opportunity to speak with Lori on numerous occasions, talked with Lori, today we did go over the Rule 29 form, line by line, she initialed each line, I believe she understands everything there. It's very hard for her to do, Your Honor, but we did have a chance before court today to speak with Mr. Foltz in the placement family that has Brittany and hopefully they're going to be able to continue a relationship, I explained to her the chances of a successful outcome from permanent custody today, she understands that, we went through all that, Your Honor, she did sign it, however you know upsettingly, but she did sign and understanding what her options were today, Your Honor.
 {¶ 21} "By the Court: I have a couple questions to ask your client then. Miss Rock, you've gone through the total form and you understand it?
 {¶ 22} "By Ms. Rock: Yes.
 {¶ 23} "By the Court: And you are doing this voluntarily, no one is promising you anything?
 {¶ 24} "By Ms. Rock: No.
 {¶ 25} "By the Court: You're doing this of your own free will, is that correct?
 {¶ 26} "By Ms. Rock: Right.
 {¶ 27} "By the Court: You understand that [sic] the nature of a permanent custody case is?
 {¶ 28} "By Ms. Rock: Yes.
 {¶ 29} "By the Court: Do you have any questions at all for the Court?
 {¶ 30} "By Ms. Rock: I have no questions, I have a statement.
 {¶ 31} "By the Court: Okay.
 . . . {¶ 32} "By Ms. Rock: I want to address this to Your Honor and the Agency, as well, and all parties involved. . . . [m]om [presumably a reference to appellant] had so much trauma compounded in her life that she chose to anesthetize her pain and this was obviously a very bad life changing decision. All I truly ever wanted in life be [sic] in a happy monogamous relationship raise my children and see that they were well educated and self sufficient and so that they would never have to depend on anyone else to take care of them and I prayed every night for their good health, safety and prosperity and then I realized one day recently that I have prayed them right out of my own life and that just simply can't be. There is a hole in my heart, slow and (inaudible) that is almost unbearable and this has rocked me and my children's lives to the very core and meant to have the possibility that I may never see Brittany again until she's 18 is truly unthinkable, she looked at me at our last visit and she said, mom, this just can't be it, this can't be it, she said, mom I need to have you in my life, I need to know that you are there for me, what can we do, what can I do, mom this can't be it with us, and I looked at her and I said, Brittany, I'll always be there, I'll always love you, I'll never turn my back on you and there will always — I will always have a home for you and my door is open, this is not just it. Mom is in therapy and treatment now and attending many AAs and getting help for my core issues that led me to using drugs and alcohol in the first place. I have a nice home and a good job now and I have more stability in my life that [sic] I have had in many years and today I pray every night that this is not just it and that I want you to join me at least as much as you can in my new life, and now I ask the Court for the forgiveness and I apologize for all the problems that I have caused and the time I've taken from you all, and I ask for mercy from the Court and for my family's unity in any way I can. Thank you.
 {¶ 33} "By the Court: Well certainly, I believe that your response is heartfelt in basis and certainly I will tell you that the problems that have come on whether child support of whatever you have voluntarily participated in the use of substance abuse and there's consequences for that and I certainly hope that you deal with that problem and straighten it out and I certainly wish the best for the child, but I will reiterate that this a termination hearing and that's the way the Court is looking at it." Tr. at 5-8.
 {¶ 34} In this case, the trial court addressed appellant personally but failed to determine whether appellant understood the nature of the allegations against her and whether appellant was aware of the consequences of her admission. Similarly, the court failed to advise appellant that by entering an admission she was waiving her rights to challenge witnesses and evidence against her, to introduce evidence at the adjudicatory hearing and to remain silent should she so choose. In short, the record does not show substantial compliance with Juv.R. 29(D).
 {¶ 35} Admittedly, appellant's counsel stated that appellant understood the stipulation and her rights. However, Juv. R. 29(D) requires a colloquy between the trial court and the person making the admission. The trial court must engage in this colloquy and cannot rely upon the counsel's assurances. In Re Becker (1996), 115 Ohio App.3d 567,685 N.E.2d 1257. Further, the trial court cannot ask questions that do not explain the nature of the admission and its consequences but instead simply take the person's word for it that he or she understands what they are doing. That is exactly what the trial court did in this case.
 {¶ 36} The appellee contends that appellant's statement to the trial court and her silence during the best interests hearing reflect that appellant understood the nature and consequences of her stipulation. However, appellant's statement does not reflect that appellant understood that "this was it" and that her attempts to get her life in order would have no impact on her daughter's life if permanent custody was granted. In fact, even appellant's counsel's comments to the trial court indicated that there had been discussions of the possibility that appellant and Brittany might be able to continue a relationship. This is not consistent with the legal ramifications of terminating a parent's legal rights. Further, the best interest hearing was conducted after the stipulation was entered and does not relieve a trial court of its duty to comply with Juv. R. 29(D).
 {¶ 37} Thus, upon review, we find that appellant was denied the procedural safeguards of Juv. R. 29(D). Accordingly, appellant's stipulation is invalid.
 {¶ 38} Absent appellant's stipulation, a juvenile court may terminate a parent's parental rights only if the evidence adduced clearly and convincingly shows that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 39} (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 {¶ 40} (b) The child is abandoned;
 {¶ 41} (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody;
 {¶ 42} (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
 {¶ 43} No evidence was presented regarding the factors set forth in R.C. 2151.414(B)(1)(a) through (d). The matter progressed from the colloquy regarding appellant's stipulations directly to a best interests hearing. In re Smith (1991), 77 Ohio App.3d 1, 15-16, 601 N.E.2d 45, 54-55. Thus, there was no evidence adduced to support a grant of permanent custody to SCDJFS. Accordingly, this Court must reverse the grant of permanent custody.
 {¶ 44} Appellant's first assignment of error is sustained.
 II {¶ 45} In the second and final assignment of error, appellant maintains that the trial court's decision that the best interest of the minor child would be served by granting permanent custody to the Department of Job and Family Services was against the manifest weight and sufficiency of the evidence. In light of this court's holding in assignment of error I, this assignment of error is moot.
 {¶ 46} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is reversed. This matter is remanded for further proceedings.
Edwards, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Juvenile Division, is reversed. This matter is remanded for further proceedings. Costs assessed to appellee.