[Cite as *In re S.D.*, 2014-Ohio-5124.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: S.D., | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| A MINOR CHILD | Hon. Sheila G. Farmer, J.<br>Hon. Patricia A. Delaney, J. |
| | Case No. 2014CA00119 |
| | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2011JCV00433 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | November 17, 2014 |
| APPEARANCES: | |

| | |
|---|---|
| For Appellee | For Appellant |
| LISA LOUY<br>Stark County Department of Jobs<br>and Family Services<br>221 Third St. SE<br>Canton, Ohio 44702 | DAVID L. SMITH<br>245 33rd St., NW<br>Canton, Ohio 44709 |

*Hoffman, P.J.*

{¶1}  Father-appellant Mailaun Diamond ("Father") appeals the May 28, 2014 Judgment Entry and the May 28, 2014 Findings of Fact and Conclusions of Law entered by the Stark County Court of Common Pleas, Family Court Division, which terminated his parental rights, privileges and responsibilities with respect to his minor daughter. Appellee is Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE FACTS AND CASE

{¶2}  Father is the biological father of S.D. (dob 2/10/2008).  He is a resident of the state of Alabama.  S.D. has significant medical issues.  On March 28, 2011, SCDJFS filed a Complaint, alleging S.D. was a neglected and dependent child, and seeking temporary custody or, in the alternative, protective supervision, of the child. Following a shelter care hearing on March 29, 2011, the trial court ordered S.D. placed in the emergency temporary custody of SCDJFS.

{¶3}  The trial court scheduled a pre-trial on April 20, 2011.  Service had not been perfected on Father.  The trial court appointed Mary Lou Sekula as guardian ad litem for S.D.  Service on Father was subsequently perfected by certified mail.  The trial court conducted an adjudicatory hearing on June 16, 2011.  Shari Gould ("Mother") stipulated to a finding of neglect.  Father did not appear at the hearing.  The trial court heard evidence as to Father's ability to care for S.D. and his involvement in the child's life.  The trial court found S.D. to be neglected, continued temporary custody with SCDJFS, and approved and adopted the case plan.

**{¶4}** Regular review hearings were held throughout the case. Mother agreed to two extensions. Father appeared for the first time at a hearing on September 27, 2012. He stipulated to an extension. Sometime during the course of the proceedings, the trial court appointed Attorney Dean Grase as guardian ad litem for Father.

**{¶5}** On February 26, 2013, SCDJFS filed a motion for planned permanent living arrangement. The trial court scheduled a hearing on the PPLA motion for March 22, 2013. Father and Mother appeared at the hearing and both stipulated to the disposition of PPLA.

**{¶6}** On January 23, 2014, SCDJFS filed a motion for permanent custody. The hearing was initially scheduled for March 18, 2014, but service on Father was incomplete. The trial court rescheduled the matter to May 20, 2014. Mother did not appear. Father appeared and stipulated to permanent custody. Father executed a written stipulation form. Thereafter, the trial court addressed Father directly. The trial court accepted Father's stipulation and proceeded to the best interest portion of the hearing.

**{¶7}** Via Judgment Entry filed May 28, 2014, the trial court terminated Father's parental rights, privileges and responsibilities with respect to S.D.

**{¶8}** It is from this judgment entry Father appeals, assigning as error:

**{¶9}** "I. THE RECORD DOES NOT REFLECT THAT APPELLANT VOLUNTARILY AND KNOWINGLY STIPULATED TO A FINDING OF PERMANENT CUSTODY AS REQUIRED PURSUANT TO JUVENILE RULE 29(D), THEREBY VIOLATING APPELLANT'S DUE PROCESS RIGHTS."

{¶10} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I

{¶11} In his sole assignment of error, Father contends the trial court violated his right to due process by failing to determine whether his stipulation was voluntarily and knowingly made. Specifically, Appellant argues:

In this case, the trial court addressed Appellant personally by [SIC] failed to determine whether Appellant understood the nature of the allegations against him and whether [A]ppellant was aware of the consequences of his admission. Similarly, the trial court failed to advise Appellant that by entering an admission he was waiving his rights to challenge witnesses and evidence against him, to introduce evidence at the adjudicatory hearing and to remain silent should he so choose. In short, the record does not reflect substantial compliance with Juv. R. 29(D). Brief of Appellant at 3-4, unpaginated.

{¶12} Juv. R. 29(D) provides:

The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.

**{¶13}** At the May 20, 2014 hearing, the trial court addressed Appellant as follows:

THE COURT: Okay, Mailaun, I need to speak with you directly about this so that I'm convinced. You've talked with your attorney, you've talked with your Guardian, they are convinced that you understand the consequences of this and that you are doing this of your own free will. I need to satisfy myself of those same things, so I'm going to be asking you a lot of the same questions that they already talked with you about, do you understand that?

FATHER: Yes, sir.

THE COURT: Okay. You understand that this is a Permanent Custody case, which means that your rights, to how do you pronounce her name?

FATHER: [S.D.]

THE COURT: [S.D.], okay, that your parental rights would be terminated and you would become a legal stranger to her. She could be

adopted by another family.  You would not have any binding right to direct that adoption.  You could make suggestions to the Department, they may or may not take those suggestions, but you would not be able to control who she was adopted by.  Do you understand that?

FATHER:  Yes, sir.

THE COURT:  Okay.  You do not have to stipulate or agree to this. You do have the right to go forward and have a trial and that's what we're here for today.   If we went forward, the Department would present testimony, witnesses would sit on the witness stand, testify about the child and what her best interests are and what her status is.  You would have the right to ask those witnesses questions and Miss Murray, your attorney, would do that for you.  She could also help you get people to sit on the witness stand and testify for you, testify about your side of things, you could get up there and testify if you wished to do that yourself.  At the end of that I would have to be sure by clear and convincing evidence, which is a lower standard than a criminal case, it's not beyond a reasonable doubt, but it's higher than a normal civil case.  It's a high standard of proof and I would have to be sure by clear and convincing evidence of the facts of the case, and that they met the facts that were in the Complaint and that it was in [S.D.'s] best interest to have Permanent Custody granted, so we could go through that trial today and you have the right to do that if you wish to.  Now if you stipulate and I accept your stipulation, we will not have that trial.  Do you understand that?

FATHER:  Yes, sir.

THE COURT:  Okay, any questions about that for me or for Mr. Grase or Miss Murray?

(discussion at counsel table)

FATHER:  Oh, okay, yes, sir.

THE COURT: Okay, did he answer your question?

FATHER:  Uh-hum.

THE COURT: Okay.  Now if we went through the trial , there are, it wouldn't necessarily be certain that Permanent Custody would be granted. There are a number of things that the Court can do.  She is already in Planned Permanent Living Arrangement or what we used to call Long Term Foster Care, she could be continued in that; she could potentially be placed with a relative; if your case plan work has been completed, she could potentially be returned to you; we could grant some additional time, keep her in PPLA so that you could work a case plan; or it may be that I would determine that she should be in Permanent Custody of the Agency, so if we run the trial there are a number of options that the Court can do at the end of the trial, it wouldn't necessarily be Permanent Custody.  If you stipulate it almost certainly will be Permanent Custody.  Do you understand that?

(discussion at counsel table)

FATHER:  Okay.

THE COURT:  Did Mr. Grase answer your question?

FATHER: Yes, sir.

THE COURT: Okay. Now did anyone threaten you with anything or say something bad would happen if you did not agree to this today?

FATHER: No, sir.

THE COURT: Did anyone promise you something, say something good would happen if you did agree to this today?

FATHER: No, sir.

THE COURT: So you are doing this of your own free will and you think this is the best thing do under the circumstances?

FATHER: Yes, sir.

Transcript of May 20, 2014 Proceedings at 4-7.

{¶14} We find the trial court substantially complied with Juv. R. 29(D). We further find the record supports a finding Appellant's stipulation to the grant of permanent custody was voluntarily and knowingly made.

{¶15} Appellant's sole assignment of error is overruled.

{¶16} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, P.J.

Farmer, J. and

Delaney, J. concur