[Cite as *In re B.Y.*, 2017-Ohio-833.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: B.Y.

C.A. No.     16AP0071

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2015-JUV-C-000717

DECISION AND JOURNAL ENTRY

Dated: March 9, 2017

CARR, Judge.

{¶1}     Appellant, Jessica B. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor child, and placed the child in the permanent custody of Wayne County Children Services ("CSB"). This Court reverses and remands.

I.

{¶2}     Appellant is the mother of B.Y., born January 13, 2012.  The father of the child was not determined.

{¶3}     On June 23, 2015, CSB filed a dependency complaint regarding B.Y. based upon allegations of heroin use by Mother.  Mother stipulated to a finding of dependency under R.C. 2151.04(C) at the adjudication, and she subsequently agreed to a disposition of temporary custody to CSB.  A brief placement with the maternal grandmother was unsuccessful, and the agency soon placed B.Y. with a foster family.

{¶4} The case plan adopted by the trial court required Mother to address substance abuse, basic needs, recommendations from a psychological evaluation, and housing. Mother was offered supervised visits for one-to-two hours weekly. At Mother's request, her boyfriend was included on the case plan. He had similar objectives and visitation provisions, but accomplished little on his case plan.

{¶5} On May 23, 2016, CSB moved for permanent custody. In that motion, CSB alleged that the child could not be placed with a parent within a reasonable time or should not be placed with a parent, *see* R.C. 2151.414(B)(1)(a), supported by allegations under R.C. 2151.414(E)(1), (E)(2), (E)(4), and (E)(11), along with a second-prong claim that permanent custody was in the best interest of the child. *See* R.C. 2151.414(D)(1).

{¶6} Mother came to court on the day set for the permanent custody hearing and requested a continuance. She had been served with notice of the hearing by publication and only saw the motion for permanent custody that morning. The court did not grant an immediate continuance, but agreed to continue the hearing until a second day to allow Mother to present evidence on her own behalf. CSB presented the bulk of its evidence on the first day and, after the admission of a stipulated exhibit, the agency rested its case on the second day.

{¶7} Thereupon, Mother's attorney announced that Mother would not call any witnesses, as anticipated, but rather offered a signed copy of a pre-printed Parental Stipulation to Permanent Custody form. According to counsel, she did so in order that "the current foster placement can move forward with adopting [B.Y.]." The trial judge stated: "[W]e have already heard from a number of witnesses and the State has rested at this point. I will go ahead and accept this form and make it part of the case file but I feel like at this point I need to rule on the merits of the case." The trial judge then asked three questions of Mother: (1) whether she had

any questions about the form, (2) whether she was under the influence of anything at the present time, and (3) whether anyone had promised her anything or made threats against her in order to sign the form, to all of which Mother answered in the negative, adding only "The paper, I did it for [B.Y.]" The court heard a brief statement by the guardian ad litem in which she reiterated her prior recommendation of permanent custody, and the case was submitted for decision. Thereafter, in the judgment entry, the trial judge indicated that she accepted Mother's Stipulation to Permanent Custody, granted CSB's motion for permanent custody, and terminated the parental rights of Mother and the unknown father.

{¶8} In granting CSB's motion for permanent custody, the trial court found that the child could not be placed with a parent within a reasonable time or should not be placed with a parent, R.C. 2151.414(B)(1)(a), and supported it with findings under R.C. 2151.414(E)(4) and (E)(11). The court also found that permanent custody was in the best interest of B.Y. *See* R.C. 2151.414(D)(1). At the same time, the trial court found that CSB had failed to meet its burden of proof regarding R.C. 2151.414(E)(1) and (E)(2). Mother has appealed and has assigned two errors for review.

II.

**<u>ASSIGNMENT OF ERROR I</u>**

THE TRIAL COURT ERRED BY RELYING UPON A STIPULATION TO PERMANENT CUSTODY SIGNED BY MOTHER AS THE TRIAL COURT FAILED TO CONDUCT A FULL INQUIRY CONCERNING THE REPERCUSSIONS OF THAT STIPULATION.

{¶9} In her first assignment of error, Mother claims the trial court erred in failing to engage in a dialogue with her to verify that she understood the consequences of a stipulation to permanent custody, and in relying upon such stipulation when it granted permanent custody to

CSB to terminate her parental rights. For the reasons set forth below, this Court sustains this assignment of error.

{¶10} At the outset, this Court observes that there is no legislative guidance on the requirements for a voluntary surrender of parental rights in juvenile court where the child has been adjudicated neglected or dependent. *See In re Miller* 61 Ohio St.2d 184, 189 (1980); *Kozak v. Lutheran Children's Aid Soc.*, 164 Ohio St. 335, 341-342 (1955). Consequently, this Court looks to decisional law to address this question.

{¶11} Parents have a "fundamental liberty interest" in the care, custody, and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *In re Murray,* 52 Ohio St.3d 155, 157 (1990). The right to raise one's children is an "essential" and "basic civil right[]" that is "far more precious * * * than property rights[.]" (Internal quotations and citations omitted.) *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). This fundamental liberty interest carries due process protections. *Santosky* at *753*; *In re Shaeffer Children*, 85 Ohio App.3d 683, 689-690 (3d Dist.1993).

> For all its consequence, "due process" has never been, and perhaps can never be, precisely defined. * * * Rather, [due process] expresses the requirement of "fundamental fairness," a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what "fundamental fairness" consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake.

*Lassiter v. Dept. of Social Servs. of Durham Cty., North Carolina*, 452 U.S. 18, 24-25, (1981).

{¶12} Since parents have constitutionally protected custodial rights, any action by the state that affects these parental rights must be conducted pursuant to procedures that are fundamentally fair. *Santosky,* 455 U.S. at 753-754; *In re Adoption of Mays*, 30 Ohio App.3d

195, 198 (1st Dist.1986). In construing "fundamental fairness" in the context of a parental rights termination proceeding, this Court notes that it has been said that parents "'must be afforded every procedural and substantive protection the law allows[,]'" *In re Hayes*, 79 Ohio St.3d 46, 48 (1997) quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991), and the termination of parental rights should only be used as a "last resort." *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). This is because when the State initiates a parental rights termination proceeding, "the State has sought not simply to infringe upon that interest but to end it. If the State prevails, it will have worked a unique kind of deprivation. A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one." (Internal citation omitted.) *Lassiter* at 27.

{¶13} Accordingly, this Court has recognized that "'"[i]n a case where parental rights are permanently terminated, it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow."'" *In re J.F.*, 9th Dist. Wayne No. 15AP0058, 2016-Ohio-1285, ¶ 11, quoting *In re Rock Children*, 5th Dist. Stark No. 2004CA00358, 2005-Ohio-2572, ¶ 17, quoting *Elmer v. Lucas Cty. Children Servs. Bd.*, 36 Ohio App.3d 241, 245 (6th Dist.1987). In addition, Ohio courts commonly consider that a parent's surrender of parental rights must be knowing, intelligent, and voluntary. *See, e.g., In re A.P.,* 9th Dist. Summit No. 23698, 2007-Ohio-5413, ¶ 5; *In re D.C.H.*, 9th Dist. Summit No. 22648, 2005-Ohio-4257, ¶ 14 ("The trial court thoroughly questioned Mother to determine whether she was relinquishing her parental rights voluntarily, knowingly and intelligently.") *In re L.D.*, 5th Dist. Stark No. 2015CA00222, 2016-Ohio-3163, ¶ 17-18; *In re K.C.,* 3d Dist. Defiance Nos. 4-15-05, 4-15-06, 2015-Ohio-3815, ¶ 12, 15; *In re*

*Terrence*, 162 Ohio App.3d 229, 2005-Ohio-3600, ¶ 1, ¶ 89 (6th Dist.). *See also In re A.J.*, 10th Dist. Franklin Nos. 14AP-284, 14AP-285, 14AP-286, 14AP-287, 2014-Ohio-5046, ¶ 27.

{¶14} Thus, fundamental due process requires that a parent's surrender of parental rights must reflect fundamental fairness, be made with full knowledge of the parent's rights and the consequences that will follow, and be knowing, intelligent, and voluntary. To this point, based upon their appellate briefs, both parties agree. Where they disagree is in whether the trial court must personally inquire of Mother concerning her rights and the consequences of stipulating to a grant of permanent custody.

{¶15} In the present case, after CSB rested, Mother's attorney represented to the court that Mother decided not to present any evidence, but rather wished to surrender her parental rights and had completed a written parental stipulation form. The trial judge promptly accepted the form, but at the same time said: [W]e have already heard from a number of witnesses and the State has rested at this point. I will go ahead and accept this form and make it part of the case file but I feel like at this point I need to rule on the merits of the case." Thereupon, the trial judge asked only three questions of Mother: (1) whether she had any questions about the form, (2) whether she was under the influence of anything at the present time, and (3) whether she had been threatened or promised anything in order to surrender her parental rights. Mother responded in the negative to each question.

{¶16} Notably, however, the trial judge did not explore any of the implications of permanent custody with Mother. She never inquired whether Mother understood the nature of the allegations against her or whether she was aware of the consequences of her stipulation. The judge did not explain that Mother would have no right to any future contact or relationship with

the child. Nor did she verify that Mother understood her rights or CSB's burden in proving its case.

{¶17} Mother maintains that, in so doing, the trial court failed to comply with fundamental due process when it did not personally address her regarding the consequences of a surrender of parental rights before accepting and relying upon a written stipulation in granting permanent custody of her child to CSB. Mother claims that this violated the due process requirement that before accepting a waiver of parental rights, the court must ensure that a parent understands his or her rights and the consequences of such action. *See Elmer*, 36 Ohio App.3d at 245.

{¶18} For its part, CSB maintains that Mother's written stipulation and a brief personal exchange between Mother and the trial judge was sufficient to establish voluntariness in the absence of any evidence that Mother was "uncertain of her decision to stipulate" or had "misunderstandings about the ramifications of her stipulation." In support of its position, CSB cites *In re Terrence,* 162 Ohio App.3d 229, 2005-Ohio-3600. This Court does not agree that *In re Terrence* compels the result that the agency suggests.

{¶19} In that case, an agreement to surrender the child was reached through a mediation process and the agreement was read into the record by the mother's attorney. *Id.* at ¶ 3. The mother's attorney asked the mother several questions on the record about the agreement, and then the trial judge engaged the mother further in a lengthy colloquy, covering her rights and the consequences of agreeing to permanent custody. *Id.* at ¶ 5-82. The trial court accepted the mother's surrender of her parental rights and the mother appealed. *Id.* at ¶ 83.

{¶20} The Sixth District Court of Appeals then specifically held that fundamental due process requires the trial court to have "a meaningful dialogue with the parent to be certain that

the consent is truly voluntary." *Id.* at ¶ 89. However, because "the meaningful dialogue" that took place in that case revealed "ambivalence" and "uncertainty" on the part of Mother, *id.* at ¶ 90, 92, the appellate court found that "[t]he waiver was not truly voluntary or knowing." *Id.* at ¶ 92. The reviewing court found that acceptance of the stipulation was error and reversed the judgment of the trial court. *Id.* at ¶ 89, 93.

{¶21} CSB argues that the present case should be affirmed because there is no evidence that Mother was uncertain of her decision to stipulate to permanent custody or had any misunderstandings about the ramifications of her stipulation, but this reasoning fails to account for the fact that Mother was not the beneficiary of "a meaningful dialogue" in the first instance, which is how and where the voluntariness of a waiver is determined, and was revealed in *In re Terrence* to be lacking.

{¶22} Some appellate districts in Ohio have relied on the principle of fundamental due process to conclude that a "meaningful dialogue" or a "thorough colloquy" between the trial judge and the parent is necessary for a valid waiver of parental rights.[1] And some appellate districts have relied on Juv.R. 29(D) to call for a full colloquy in final dispositional hearings.[2]

---

[1] *See, e.g.,* In *In re R.J.*, 6th Dist. Lucas No. L-15-1251, 2016-Ohio-539, ¶ 18-20 (the trial judge accepted the parent's waiver only after conducting a "thorough colloquy" of rights and consequences with the parent); *In re K.C.,* 3d Dist. Defiance Nos. 4-15-05, 4-15-06, 2015-Ohio-3815, ¶ 24 (trial court's "extensive discussion" with father was a good example of a meaningful dialogue); *In re K.H.,* 191 Ohio App.3d 251, 2010-Ohio-5172, ¶ 46 (6th Dist.) (basic due process requires that when a parent is waiving the fundamental right to custody of a child, the trial court must have a meaningful dialogue with that parent to be certain that the consent is truly voluntary and knowing); *In re Terrence*, 162 Ohio App.3d 229, 2005-Ohio-3600 at ¶ 89 ("fundamental due process requires that * * * the trial court must have a meaningful dialogue with that parent to be certain that the consent is truly voluntary"); *In re Isreal Y.*, 6th Dist. Lucas No. L-07-1030, 2007-Ohio-3685, ¶ 8-42 (a lengthy colloquy took place, and the appellate court found that the juvenile court established a knowing and voluntary waiver).

[2] *See, e.g.*, *In re S.D.*, 5th Dist. Stark No. 2014CA00119, 2014-Ohio-5124, ¶ 14; *In re C.P.*, 8th Dist. Cuyahoga No. 91393, 2008-Ohio-4700, ¶ 18-24; *In re Rock Children*, 2005-Ohio-

{¶23} For its part, CSB has not proffered any legal authority to this Court in which the dialogue between the trial judge and parent was so limited as that in the case before us today and which was found to satisfy the requirements of fundamental due process and represented a knowing, intelligent, and voluntary waiver.

{¶24} In analogous contexts, courts have applied a balancing test of the competing interests to determine whether there has been a denial of "the specific dictates of due process." *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See, e.g., In re Gray*, 9th Dist. Wayne Nos. 99CA0014, 99CA0015, 1999 WL 1260292, *4 (Dec. 22, 1999). Such a balancing test may be useful in considering whether a parent was denied the right to due process by the lack of a dialogue regarding her understanding of the rights and consequences to a stipulation to permanent custody. The *Mathews* test requires a court to evaluate three factors: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest including the governmental burden of additional procedural requirements. *Id.* at 335.

{¶25} In this case, an application of the *Mathews* test requires a balancing of: (1) the fundamental liberty interest of a parent to raise his or her child; (2) the risk of the unnecessary destruction of a natural family and the value of the safeguard of a dialogue to more accurately assess the parent's position; and (3) a government interest in promoting the welfare of the child and a minimal burden, both fiscally and administratively. Upon consideration, this Court concludes that the balance of the competing interests in this case is clearly in favor of requiring a meaningful dialogue between the trial judge and the parent regarding the parent's understanding

---

2572 at ¶ 12, 35 (The trial court cannot rely on counsel's assurances.); *In re Foresha/Kinkel Children*, 5th Dist. Stark No. 2003CA00364, 2004-Ohio-578, ¶ 5-15; *In re Fennell*, 4th Dist. Athens No. 01CA45, 2002 WL 194221, *6 (Jan. 23, 2002) (holding that the dispositional hearing is entirely dependent on the adjudicatory phase).

of the rights and consequences of a stipulation to permanent custody before the court may accept a surrender of parental rights. *See Elmer*, 36 Ohio App.3d at 245.

{¶26} In sum, absent a "meaningful dialogue" between the trial judge and Mother to ensure that Mother understood the rights and the consequences involved in such a decision, this Court cannot conclude that Mother was afforded the necessary due process protections by which to ensure that her surrender of parental rights was fundamentally fair and that it was knowing, intelligent, and voluntary.

{¶27} Additionally, Mother claims that this error cannot be deemed harmless because the trial court relied upon the stipulation in deciding to terminate Mother's parental rights and so indicated in her judgment entry. The record reveals that the trial judge did not ignore the stipulation and reach her decision solely "on the merits," but rather referred to the stipulation six times in her judgment entry. Three of the references are factual recitations of the existence of the stipulation or the court's acceptance of it. The remaining three references, quoted below, are connected to the substantive results in this matter:

> [1] A little over one year has passed. There is still an opportunity for Mother to work towards reunification with the child. However, Mother has not demonstrated a commitment to doing so and at the conclusion of the hearing executed a parental stipulation form to the motion for permanent custody. * * *
>
> [2] An extension of temporary custody may have been warranted but at the conclusion of the hearing Mother executed a stipulation to the motion for permanent custody. * * *
>
> [3] Despite these reasonable case planning services, it is in the child's best interest to be placed in the permanent custody of Children Services at this time as Mother has executed a parental stipulation form agreeing that any parental rights to the child should be terminated at this time.

{¶28} Based upon the first two references, it appears that the trial court relied upon the stipulation in deciding to grant permanent custody instead of granting Mother an extension of

temporary custody. According to the trial judge, an extension of temporary custody "may have been warranted" were it not for the stipulation. The record demonstrates that the motion for permanent custody was filed eleven months after the complaint was filed and the hearing took place one month later. Thus, as recognized by the trial court, there was ample time for at least one extension of temporary custody. ("There is still an opportunity for Mother to work towards reunification with the child.")

{¶29} Next, the trial court indicated that it relied on the stipulation in finding that Mother demonstrated a lack of commitment to the child, which is a first prong finding entered by the trial court. *See* R.C. 2151.414(E)(4). ("However, Mother has not demonstrated a commitment [to work towards reunification] and at the conclusion of the hearing executed a parental stipulation form to the motion for permanent custody.")

{¶30} Finally, the trial court found that the agency had made reasonable case planning efforts to reunify the family and that it was in the child's best interest to be placed in the permanent custody of CSB. The trial court tied those findings to the stipulation as well. ("Despite these reasonable case planning services, it is in the child's best interest to be placed in the permanent custody of Children Services at this time *as* Mother has executed a parental stipulation form[.]"). (Emphasis added.)

{¶31} What is more, the finding that the agency engaged in reasonable case planning efforts is noteworthy in light of the trial court's determination that the agency had failed to meet its burden of proof with respect to the claim pursuant to R.C. 2151.414(E)(1) ("[N]otwithstanding reasonable case planning and diligent efforts by the agency * * *, the parent has failed continuously and repeatedly to substantially remedy the conditions causing [removal.]"). The trial court reached this conclusion because it found that the caseworker failed

to engage in reasonable case planning and diligent efforts in several specific regards. The court specifically found that the caseworker "did not know whether Mother engaged in medication management[,] * * * never discussed this with her or followed up with her on this aspect of her case plan[,] * * * did not know whether Mother was receiving mental health counseling or parenting instruction[, a] referral for parenting classes had never been made[,] * * * has not had a conversation with Mother regarding employment and employment assistance has not been offered to her[,] * * * has not requested that Mother submit to drug screens since her completion of her drug treatment program except for May 23, 2016[,]" and did not ask to see Mother's prescriptions, despite learning Mother had been prescribed medication that may account for one positive result. The trial judge concluded that "Mother has completed many of her case plan services or is otherwise unable to do so because needed referrals have not been made." Thus, the trial court's findings that the agency had made reasonable efforts and provided reasonable case planning services seem all the more likely to have depended upon Mother's stipulation.

{¶32} Accordingly, this Court concludes that the trial court erred in relying on a written stipulation to permanent custody without conducting a meaningful dialogue with Mother regarding the rights and consequences of such a waiver. The trial court has not expressed an opinion on the question of whether the evidence presented by CSB alone clearly and convincingly supported an order granting permanent custody, and this Court may not reach such a conclusion in the first instance. Mother's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY FINDING THAT MOTHER DEMONSTRATED A LACK OF COMMITMENT TO HER CHILD AND THAT PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST.

{¶33} Mother's second assignment of error is rendered moot. *See* App.R. 12(A)(1)(c).

III.

{¶34} Mother's first assignment of error is sustained. Mother's second assignment of error is rendered moot. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and the cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶35} I concur in the result of the lead opinion in this case, but I would reverse the decision of the trial court on a different basis. I find merit in Mother's second assignment of error, which challenges both prongs of the trial court's permanent custody finding.

{¶36} Although Mother challenges the trial court's first prong finding under R.C. 2151.414(E)(4), she left the trial court's alternative first prong finding under R.C. 2151.414(E)(11) unchallenged. Because the alternative finding is unchallenged, the first prong of the permanent custody test is satisfied on that basis. *See In re E.M.*, 9th Dist. Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 12. However, I find merit in Mother's challenge of the second prong finding because without considering the stipulation and the finding that Mother has not demonstrated a commitment toward reunification with the child, I cannot conclude that there was clear and convincing evidence that it was in the best interest of B.Y. to be placed in the permanent custody of CSB.

{¶37} Clear and convincing evidence is that which will "'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 268 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶38} Furthermore, in reviewing a challenge to the weight of the evidence, this Court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d, 115 (9th Dist.2001).

{¶39} Like the lead opinion of the Court, I am concerned about any reliance, even in part, on a waiver of parental rights, accepted without a full colloquy.

{¶40} What is clear from the judgment entry is that the trial court found that Mother's lack of commitment to the child and her agreement to stipulate to permanent custody played a role in finding that it was in the child's best interest that permanent custody be granted. The genesis and continuing cause of missed visits, communication difficulty, and hence, a lack of commitment to B.Y. is not clear from the testimony. Credibility determinations aside, taking solely the evidence of the agency's case, and not considering the parental stipulation, I would not find clear and convincing evidence that it is in B.Y.'s best interest to grant permanent custody to CSB.

{¶41} Consequently, I would sustain Mother's second assignment of error and reverse and remand for further proceedings.

SCHAFER, J.
DISSENTING.

{¶42} I respectfully dissent. I agree with the lead opinion that the trial court's colloquy with Mother regarding her stipulation to relinquish permanent custody of B.Y. was insufficient to fully inquire whether Mother understood the implications of permanent custody. Nevertheless, I believe that Mother's tendered stipulation merely underscored and buttressed the trial court's findings of fact that led it to terminate Mother's parental rights and grant permanent custody to Children Services. The trial judge said as much when she stated, "I will go ahead and accept this [Parental Stipulation to Permanent Custody] form and make it part of the case file but I feel like at this point I need to rule on the merits of the case." The trial judge thereafter proceeded to rule on the merits of the case, relying on the evidence that the agency presented during the permanent custody trial.

{¶43} The lead opinion cites to a litany of Ohio cases that hold that a parent's surrender of parental rights must be made knowingly, intelligently, and voluntarily. While I emphatically agree with this general statement of law, I believe that the facts of the cases cited in the majority opinion and the facts of the present case are quite distinguishable. Chiefly, each of the cases relied upon by the majority involve parents who relinquished permanent custody of their children, thus negating the need for a permanent custody trial. Here, however, Mother did not execute the Parental Stipulation to Permanent Custody form until the second day of the two-day trial, *after* the agency had already put forth all of its evidence and rested its case. And, as discussed below, the trial court's decision to grant permanent custody of B.Y. to Children Services was based on evidence that the agency presented at the permanent custody trial, wholly independent of Mother's stipulation form.

{¶44} In granting permanent custody to a child protection agency, in addition to addressing the best interest factors as required by R.C. 2151.414(D), R.C. 2151.414(E) requires the trial court to find by clear and convincing evidence that *one or more* of sixteen enumerated factors exists before determining whether the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. A review of the trial court's entry granting the agency permanent custody of B.Y. indicates that the trial court made such a finding relying upon evidence other than Mother's Parental Stipulation to Permanent Custody form.

{¶45} First, the trial court specifically found that even though Children Services was unable to meet its burden of proof for some of the sixteen factors, it did meet its burden with respect to *two* of the factors, namely R.C. 2151.414(E)(4) and R.C. 2151.414(E)(11). Specifically, the trial court found that Mother demonstrated a lack of commitment by failing to regularly visit B.Y. when able to do so (Mother attended less than half of 54 scheduled visits

despite being offered transportation to and from the visits) and that Mother failed to prove that she is able to provide a legally secure permanent placement and adequately care for B.Y. On the latter point, the trial court noted that Mother previously had two other children involuntarily removed from her custody in North Carolina and is presently in a relationship with an individual who suffers from a substance abuse addiction, has overdosed twice, and is facing drug-related charges. Additionally, pursuant to R.C. 2151.414(D), the trial court explicitly found it to be in B.Y.'s best interest to be placed in the permanent custody of Children Services.

{¶46} For the above-mentioned reasons, I do not believe that the trial court "relied" upon Mother's stipulation when terminating her parental rights. Thus, I would affirm the trial court's grant of permanent custody to Children Services.

APPEARANCES:

CHRISTINA I. REIHELD, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and MELODY L. BRIAND, Assistant Prosecuting Attorney, for Appellee.