OPINION
{¶ 1} David Durand appeals from a judgment of the Miami County Court of Common Pleas, Juvenile Division, which granted permanent custody of his sons, A.D. and S.D., to the Miami County Children's Services Board (MCCSB). For the following reasons, we will reverse the judgment of the trial court.
 I {¶ 2} On January 5, 2004 MCCSB filed a complaint of neglect regarding four siblings, D.R., K.D., S.D., and A.D., alleging that their mother Melinda Durand was a crack addict who was failing to provide adequate parental care for the children. The children's father, David Durand, was incarcerated in Florida when the complaint was filed.
 {¶ 3} The trial court promptly adjudicated the children dependent and granted temporary custody to MCCSB. The following year MCCSB requested that the older children, 16-year-old D.R. and 15-year-old K.D., be placed in a planned permanent living arrangement (PPLA). The agency sought permanent custody of 11-year-old S.D. and 12-year-old A.D. Melinda Durand agreed to both the PPLA for the older children and to the agency taking permanent custody of the younger children. Mr. Durand filed a notice of appeal from that decision.
 {¶ 4} The trial court held a separate hearing regarding Mr. Durand's parental rights the following month. Mr. Durand appeared by telephone from prison and agreed to the PPLA for the two older children. The issue of permanent custody of the two younger children was continued several times, and on August 9, 2005 Mr. Durand again appeared by telephone from prison. He asked the court to conduct an in camera interview of the children regarding their wishes. The children told the magistrate that they wished to remain in foster care but that they wanted to maintain contact with their father by mail. Mr. Durand agreed that S.D. and A.D. should be placed in the permanent custody of MCCSB but that he would maintain correspondence with the children. Mr. Durand appeals from the judgment entered after the August 9 hearing that concludes as follows:
 {¶ 5} "THIS ORDER DIVESTS THE PARENTS OF ANY AND ALL PARENTAL RIGHTS, PRIVILEGES, AND OBLIGATIONS EXCEPT THE RIGHT OF THE PARENTS TO APPEAL THE PERMANENT CUSTODY ORDER."
 {¶ 6} We have consolidated both of Mr. Durand's appeals.
 II {¶ 7} Mr. Durand's First Assignment of Error:
 {¶ 8} "Appellant's waiver of his right to a hearing on permanent custody of his children was neither knowingly nor freely given."
 {¶ 9} Mr. Durand's Second Assignment of Error:
 {¶ 10} "Appellant was denied effective assistance of counsel by his counsel's failure to clarify on the record the full consequences of his consenting to permanent custody of his children."
 {¶ 11} In his first assignment of error, Durand maintains that he did not knowingly and voluntarily agree to the grant of permanent custody of A.D. and S.D. to MCCSB because he did not understand that such an agreement would mean that he no longer had a right to maintain contact with the children. Related to that argument, Durand insists in his second assignment of error that his trial counsel had an obligation to ensure that the record contained a full explanation of the consequences of his consenting to permanent custody of his children.
 {¶ 12} "In a case where parental rights are permanently terminated, it is of utmost importance that the parties fully understand their rights and that any waiver is made with full knowledge of those rights and the consequences which will follow." Elmer v. Lucas Cty. Childrens Services Bd. (1987),36 Ohio App.3d 241, 245, 523 N.E.2d 540. In other words, "[t]he waiver of one's parental rights should not be based upon misunderstandings. . . ." In re Terrence, 162 Ohio App.3d 229,2005-Ohio-3600, ¶ 92.
 {¶ 13} The record in this case is very brief. It contains no statement of Mr. Durand's rights and no clear explanation that by agreeing to permanent custody of his children, Mr. Durand was giving up all rights to maintain contact with the children. While Mr. Durand's counsel may have explained this to him, those conversations were necessarily off the record.
 {¶ 14} On the other hand, the record does contain several references to Mr. Durand maintaining contact with his children through correspondence. The court specifically stated that Mr. Durand could correspond with his children through MCCSB, including receiving school photos and report cards. The court also agreed that Mr. Durand could arrange through MCCSB to visit with his children after he is released from prison. To further confuse matters, the GAL agreed that permanent custody was in the children's best interest, but that continued contact with their father should be permitted.
 {¶ 15} While it seems clear that Mr. Durand understood that any contact would have to be made through MCCSB, there is an implication that such contact would automatically be permitted. There was no discussion about the agency's right to terminate correspondence or deny visits at any time with or without reason. There was no explanation that any contact with the children was not a right but merely a privilege to be allowed at the discretion of the agency.
 {¶ 16} We conclude that the repeated referrals to continued correspondence and the mention of visitation were likely to have been confusing to Mr. Durand's understanding that he was giving up all rights to his children. Thus, the record in this case indicates that Mr. Durand relinquished his parental rights because he was advised that continued contact with the children was possible and not necessarily because he believed that the decision was in the children's best interest.
 {¶ 17} Upon this record we cannot conclude that Mr. Durand fully understood the effect of agreeing to permanent custody. Accordingly, Mr. Durand's first assignment of error is well taken. His second assignment of error will be overruled as moot.
 III {¶ 18} Mr. Durand's Third Assignment of Error:
 {¶ 19} "The trial court's order terminating Appellant's parental rights is illegal since the trial court failed to appoint an attorney guardian-ad-litem or to require the timely filing of a report and recommendation of the GAL."
 {¶ 20} Finally, Mr. Durand argues for the first time on appeal that the trial court erred by failing to appoint an attorney as a guardian ad litem for the children. As a result, he concludes that the GAL's written report was neither timely nor professional. The record shows that a CASA volunteer was appointed as GAL. This procedure is regularly used by the courts as there is no statutory requirement that a GAL also be a licensed attorney. See, Juv.R. 32. Additionally, in this case the GAL presented a report in June, 2005 and updated that report two months later for the August 9, 2005 hearing. Accordingly, Mr. Durand's third assignment of error is without merit and will be overruled.
 IV {¶ 21} Having sustained Mr. Durand's first assignment of error, the judgment of the trial court will be reversed, and this matter will be remanded for further proceedings consistent with this opinion.
Fain, J. and Glasser, J., concur.
(Hon. George M. Glasser retired from the Sixth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).