[Cite as *In re B.W.*, 2018-Ohio-4544.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: B.W.

C.A. No.    18AP0034

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2016 JUVC 000375

DECISION AND JOURNAL ENTRY

Dated: November 13, 2018

SCHAFER, Presiding Judge.

{¶1} Appellant, R.W. ("Father"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his minor child in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Father is the biological father of B.W., born March 19, 2012. The child's mother did not appeal from the trial court's judgment.

{¶3} On March 29, 2016, CSB filed a complaint, alleging that B.W., who already had multiple medical problems and had begun having seizures at school, was a neglected and dependent child because the parents were not meeting the child's medical needs. The child was later adjudicated dependent and initially remained in the home of his parents under an order of protective supervision.

{¶4} During the trial court proceedings, CSB became aware of domestic violence and drug use in the home, so B.W. was removed and placed in the temporary custody of CSB. For the remainder of the case, neither parent substantially complied with the reunification requirements of the case plan. On February 21, 2018, CSB moved for permanent custody of B.W.

{¶5} At the time of the hearing, Father was incarcerated for a conviction of felony domestic violence but was transferred to the court for the hearing. Before the presentation of evidence, Father stipulated to the permanent custody motion. Prior to accepting Father's stipulation, the trial judge questioned Father about whether he was voluntarily, intelligently, and knowingly waiving his parental rights. After a hearing on CSB's evidence against mother, the trial court terminated both parents' rights and placed B.W. in the permanent custody of CSB. Father appeals and raises one assignment of error.

II.

**Assignment of Error**

> **The trial court erred by relying upon a stipulation to permanent custody signed by [Father] as when the trial court conducted its inquiry concerning the repercussions of that stipulation [Father's] responses showed he was not in full understanding of the consequences of his waiver.**

{¶6} Father does not assign error to the merits of the trial court's permanent custody decision but instead asserts that the trial court erred in accepting his relinquishment of parental rights. He cites to selected excerpts from the record and asserts that the trial court should not have accepted his agreement to permanent custody because he had expressed "uncertainty" and a "clear lack of understanding" about the rights that he was waiving. A thorough review of the record, however, reveals that Father voluntarily, intelligently, and knowingly relinquished his parental rights to B.W.

**{¶7}** "[T]here is no legislative guidance on the requirements for a voluntary surrender of parental rights in juvenile court where the child has been adjudicated neglected or dependent." *In re B.Y.*, 9th Dist. Wayne No. 16AP0071, 2017-Ohio-833, ¶ 10. Nevertheless, because parents have a constitutional right to raise their children, "due process requires that a parent's surrender of parental rights must reflect fundamental fairness, be made with full knowledge of the parent's rights and the consequences that will follow, and be knowing, intelligent, and voluntary." *Id*. at ¶ 14. To satisfy this standard, a parent's relinquishment of parental rights must include "a 'meaningful dialogue' between the trial judge and [parent] to ensure that [the parent] understood the rights and the consequences involved in such a decision[.]" *Id*. at ¶ 26, quoting *In re Terrence-Jamison*, 162 Ohio App. 3d 229, 2005-Ohio-3600, ¶ 89 (6th Dist.).

**{¶8}** At the commencement of the hearing, Father's trial counsel informed the trial court that he had discussed the permanent custody motion with Father and that Father had expressed a desire to waive his right to contest the motion. Trial counsel further informed the court that Father understood that he could not properly care for the child, that the foster parents were willing and able to do so, and that the foster parents were willing to allow Father to maintain contact with B.W. "as long as he is doing what he needs to do to maintain sobriety and be appropriate and maintain an appropriate relationship with [B.W.]." Counsel informed the court that those were the reasons that Father was waiving his rights.

**{¶9}** Father and his trial counsel stepped outside the courtroom to discuss the matter further and for Father to complete and sign a PARENTAL STIPULATION TO PERMANENT CUSTODY form. Although Father signed the form, he did not fully complete it. Notably, he did not initial the part of the form in which he would have indicated that his waiver of rights was voluntary because he "couldn't bring [himself] to sign any of that."

{¶10} After Father and trial counsel returned to the courtroom, the trial court conducted a colloquy with Father before accepting his stipulation to the permanent custody motion. The trial court questioned Father in detail about each of the rights that he was waiving, whether he understood those rights, and whether his waiver was completely voluntary. Although Father answered two of the court's questions with remarks that were not responsive to the questions, the trial court delved into those remarks further to ascertain that Father was not confused, intoxicated, mentally impaired, or otherwise under any disability that prevented him from voluntarily waiving his rights. Father also repeatedly stated that no one had promised him anything in exchange for his waiver of rights.

{¶11} While the trial judge questioned Father about the rights that he was waiving, Father explained that he knew that he could not provide B.W. with a suitable home, that the child had special needs, and that he understood that the child was being well cared for by the foster parents. Father noted that he would like to maintain contact with B.W. but, pursuant to further questioning by the trial court, he expressed his understanding that an arrangement for continuing contact would be entirely at the discretion of B.W.'s foster family, that the trial court had no authority to enforce any such agreement, and that Father would lose all legal rights as the parent of B.W. Father answered, "Right, right, I understand that."

{¶12} The record reveals that the trial court conducted a meaningful dialogue with Father, which fully supported the trial court's decision to accept Father's stipulation to permanent custody. Father's statements on the record do not suggest that he was confused or misled but instead demonstrate that Father executed a voluntary, intelligent, and knowing waiver of his parental rights in this case. Father's assignment of error is overruled.

III.

**{¶13}** Father's assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
DISSENTING.

{¶14} I cannot agree with the majority that Father executed a knowing and intelligent waiver of his parental rights in this case. Prior to Father speaking to the trial judge, his counsel explained that the foster parents were willing to allow continued contact between Father and B.W. and that was one of the reasons that Father had agreed to surrender his parental rights. During her colloquy with Father, the trial judge continued to refer to the foster parents and emphasized that any continued contact would be at their discretion. The evidence at the hearing would later reveal, however, that the foster parents did not plan to adopt B.W., but there is nothing in the record to suggest that Father was aware of that fact. Although Father may have understood that the trial court could not enforce his agreement with the foster parents, there is nothing in the record to suggest that he understood that any agreement with the foster family would end if and when B.W. is placed with another family. Because the record demonstrates that Father may have been confused about his ability to have ongoing contact with his child, I would reverse the trial court's judgment insofar as it accepted Father's stipulation to permanent custody. For that reason, I respectfully dissent.

APPEARANCES:

MICHELLE FINK, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.

KARIN WIEST, Guardian ad Litem.