[Cite as *In re E.S.*, 2020-Ohio-6708.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: E.S.

C.A. No.    29776

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 18 02 0135

DECISION AND JOURNAL ENTRY

Dated: December 16, 2020

CALLAHAN, Presiding Judge.

{¶1}    Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that accepted her voluntary relinquishment of her parental rights, terminated the parents' parental rights, and placed the child E.S. in the permanent custody of appellee Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}    Mother is the biological mother of E.S. (d.o.b. 2/11/18). Paternity has not been established.

{¶3}    Mother tested positive for multiple drugs, including cocaine and opiates, at the child's birth at 27 weeks' gestation. The following day, Mother required aortic valve replacement surgery. She remained intubated and sedated in the intensive care unit, while E.S. was in the neonatal intensive care unit.

{¶4} Within days of the child's birth, CSB filed a complaint alleging that she was dependent pursuant to R.C. 2151.04(B), (C), and (D). The agency alleged that Mother had significant medical and mental health issues, as well as drug and criminal histories; that two other of Mother's children had previously been removed based on Mother's drug use; and that no one was available to make decisions on behalf of the child. As Mother was then in a coma, and paternity had not been established, E.S. was placed in the emergency temporary custody of her maternal grandmother under an order of protective supervision on request of the agency. When the child was to be released from the hospital two months later, however, CSB requested and was granted an emergency order of temporary custody to the maternal great grandmother under the agency's protective supervision. Mother agreed to this change.

{¶5} At the adjudicatory hearing, Mother stipulated to a finding of dependency pursuant to R.C. 2151.04(C), and the agency dismissed its remaining two allegations of dependency. At the dispositional hearing, Mother stipulated that the child would be placed in the temporary custody of the maternal great grandmother with protective supervision by CSB. The juvenile court granted Mother supervised visitation and adopted the agency's case plan as an order.

{¶6} As the case progressed, Mother was cooperative and compliant with her case plan objectives. CSB initiated unsupervised visitation and later moved to return E.S. to Mother's legal custody under its protective supervision. After the child had been in Mother's legal custody for two and a half months, CSB moved to terminate its protective supervision based on Mother's sustained sobriety and progress in achieving her case plan goals. The guardian ad litem agreed with the agency's motion.

{¶7} Immediately thereafter, however, Mother relapsed into ongoing cocaine use. The child was again removed from Mother's care, and supervised visits were reinstated. Unfortunately,

as Mother continued to abuse drugs and exhibit other problematic behaviors, and as no approved caregiver was available or willing to assume custody of E.S., CSB filed a motion for permanent custody.

{¶8} As to the first prong of the permanent custody test, the agency alleged that E.S. could not or should not be returned to her parents on the basis of five R.C. 2151.414(E) grounds. As part of its best interest argument, CSB alleged that Mother had put the child at substantial risk of harm two or more times due to her drug abuse issues, and that Mother had refused to participate in treatment two or more times after being ordered to do so under the case plan. *See* R.C. 2151.414(D)(1)(e). Mother filed a motion requesting, alternatively, legal custody, legal custody with protective supervision, or legal custody to her boyfriend. The guardian ad litem filed a report recommending that an award of permanent custody was in the child's best interest.

{¶9} The matter proceeded to a hearing on the pending dispositional motions. Mother was not present at the start of the hearing. Her attorney informed the court that Mother thought the hearing was later and that she would arrive in half an hour. Mother's attorney requested legal custody to a third party on Mother's behalf. While waiting for Mother to arrive, the judge heard the testimony of the various records custodians whom CSB called as witnesses.

{¶10} When Mother still failed to appear in person, her attorney requested that Mother be allowed to attend the hearing by phone via Zoom access, with audio only because Mother had no video capability pursuant to her telecommunications plan. After verifying Mother's phone number with her attorney, the judge admitted Mother to the hearing by audio appearance. Mother verified that she could hear the proceedings and she agreed to mute her phone unless she needed to inform the court that she could not hear.

{¶11} After CSB presented the testimony of its next witness, and Mother's attorney had the opportunity for cross-examination, the trial court then took a brief recess. The judge told Mother to stay on the line.

{¶12} After the recess, Mother's attorney informed the court that Mother wished to relinquish her parental rights to E.S. The attorney asserted that she had explained everything to Mother a few times and that she believed that Mother understood. The attorney requested that Mother be permitted to relinquish over the phone. The judge stated that she would go over the waiver of rights form with Mother over the phone and accept her assent unless there was any objection. When no party objected, the juvenile court judge engaged in a lengthy discussion with Mother regarding her rights and the ramifications of a voluntary surrender. Thereafter, the juvenile court accepted Mother's relinquishment of her parental rights.

{¶13} Before proceeding with additional testimony regarding any alleged father, the juvenile court again addressed Mother by name to see if she was still on the line. Mother responded that she was. The juvenile court told Mother that she was free to stay on the phone or disconnect, as she wished. Mother informed the court that she was going to disconnect so she could call her boyfriend, who had had a significant relationship with the child, to let him know how the matter was resolved. In conclusion, Mother thanked everyone for their time and for "making sure that [the child's] all right."

{¶14} CSB continued its case-in-chief and presented the testimony of the agency caseworker. The guardian ad litem gave her report on the record, recommending permanent custody in the best interest of the child. The foster mother was permitted to make a statement by phone.

{¶15} Thereafter, the juvenile court issued its judgment. It found that the child could not or should not be returned to her parents because her father had abandoned E.S. and Mother had voluntarily surrendered her parental rights. Further finding that it was in the best interest of the child, the juvenile court granted CSB's motion for permanent custody. Mother filed a timely appeal and raises one assignment of error for review.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PLAIN ERROR BY ACCEPTING A RELINQUISHMENT WITHOUT SWEARING IN MOTHER OR PROPERLY DETERMINING IT WAS GIVEN INTELLIGENTLY, VOLUNTARILY, AND KNOWINGLY.

{¶16} Mother argues that the juvenile court committed plain error by accepting her relinquishment of parental rights. Specifically, Mother assigns error to the juvenile court's failures to place her under oath, verify her identity, and determine that Mother's relinquishment was made intelligently, voluntarily, and knowingly. This Court disagrees.

> "In the criminal context, plain error does not exist unless it can be said that but for the error, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice. *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 57. The civil plain error standard may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus."

*In re K.J.*, 9th Dist. Summit No. 29149, 2019-Ohio-123, ¶ 10, quoting *In re S.G.*, 9th Dist. Summit No. 27428, 2015-Ohio-2503, ¶ 11. As this Court has written for a number of years, we have not yet determined which plain error standard applies in juvenile dependency, neglect, and abuse cases. *In re K.J.* at ¶ 11, citing *In re K.C.*, 9th Dist. Lorain No. 17CA011135, 2017-Ohio-8779, ¶

29. We need not make that determination in this case because Mother has failed to demonstrate any error by the juvenile court.

{¶17} In cases involving a parent's relinquishment of rights, this Court has recognized the following:

> "[T]here is no legislative guidance on the requirements for a voluntary surrender of parental rights in juvenile court where the child has been adjudicated [abused,] neglected[,] or dependent." *In re B.Y.*, 9th Dist. Wayne No. 16AP0071, 2017-Ohio-833, ¶ 10. Nevertheless, because parents have a constitutional right to raise their children, "due process requires that a parent's surrender of parental rights must reflect fundamental fairness, be made with full knowledge of the parent's rights and the consequences that will follow, and be knowing, intelligent, and voluntary." *Id.* at ¶ 14. To satisfy this standard, a parent's relinquishment of parental rights must include "a 'meaningful dialogue' between the trial judge and [parent] to ensure that [the parent] understood the rights and the consequences involved in such a decision[.]" *Id.* at ¶ 26, quoting *In re Terrence-Jamison*, 162 Ohio App.3d 229, 2005-Ohio-3600, ¶ 89 (6th Dist.).

*In re B.W.*, 9th Dist. Wayne No. 18AP0034, 2018-Ohio-4544, ¶ 7.

{¶18} Mother argues error due to the juvenile court's failure to first place her under oath prior to discussing her relinquishment of parental rights, but cites no legal authority in support. This Court has found no authority for Mother's proposition. Moreover, we have never recognized such a requirement. Accordingly, the juvenile court did not err when it did not place Mother under oath prior to accepting her voluntary surrender of parental rights.

{¶19} In addition, although Mother implies error based on the juvenile court's failure to ensure that Mother execute a written waiver of her parental rights, she again cites no authority for her proposition. As previously noted, while the juvenile court must engage in a "meaningful dialogue" with the parent, *see In re B.W., supra*, this Court has never recognized a legal requirement for the execution of a written relinquishment of parental rights. Mother has not persuaded us to change that position.

{¶20}   Mother next argues that she did not relinquish her parental rights in a knowing, intelligent, and voluntary manner.  The record belies this argument.

{¶21}   Mother was properly served with notice of the permanent custody hearing; and she indicated, through counsel, her intention to attend the lower court proceedings.  After mistaking the time for the hearing and later losing her pre-arranged transportation to the courthouse, Mother requested, through counsel, to attend the hearing remotely via Zoom as authorized pursuant to Covid-19 protocols of the court.  Because Mother had only talk and texting capabilities on her phone plan, however, her attorney requested that Mother be allowed to attend the hearing solely by audio.  After verifying Mother's phone number with counsel, the juvenile judge admitted Mother to the hearing via Zoom on Mother's request and without objection by any other party.  Mother responded to her name and acknowledged that her connection was good and that she could hear the proceedings.

{¶22}   Mother was present by audio and represented by counsel who was present in the courtroom for the complete testimony of her Community Health Center treatment counselor who testified, in part, that Mother relapsed into cocaine use in early October 2019, and tested positive for drugs every week with one exception through the date of the hearing in June 2020.  After the counselor's testimony concluded, the trial court took a brief recess, although Mother remained connected to the proceedings by phone.  During the recess, Mother had the opportunity to confer with her attorney.

{¶23}   After the recess, Mother's attorney informed the court that Mother wished to voluntarily relinquish her parental rights after the two had the opportunity to discuss the matter.  Thereafter, the juvenile court judge engaged in a lengthy and very detailed colloquy with Mother.  The judge explained all of Mother's hearing rights, including, but not limited to, her rights to

present evidence and the testimony of witnesses; to subpoena witnesses; to testify or decline to testify on her own behalf; to hold CSB to its burden of proof by clear and convincing evidence and in compliance with the Ohio Rules of Evidence; and to appeal the trial court's judgment. The juvenile judge further explained the consequences of Mother's waiver of her rights, including, but not limited to, her forfeiture of the above rights; and the termination of her legal status as the child's mother, including the rights to visitation, to consent to adoption, and to determine the child's religious affiliation, as well as the obligation to pay child support. The judge clarified that the juvenile court could not make any guarantees regarding the adoption of the child, and that Mother would not receive any notice regarding any adoption proceedings in the probate court.

{¶24} After each explanation by the juvenile court, Mother asserted that she understood. In addition, Mother assured the judge that no one had threatened or promised her anything to persuade her to voluntarily surrender her parental rights, that she had had the opportunity to discuss her options fully with her attorney, that she was not under the influence of any drugs or alcohol, and that her ability to think clearly and make decisions was not being adversely affected by any medications she was or was not taking at the time. The judge specifically asked Mother if she believed that she was waiving her rights and making the decision to relinquish her parental rights in a knowing, voluntary, and intelligent manner. Mother asserted that she was. Based on a thorough review, this Court concludes that the record reflects that Mother's relinquishment of her parental rights was indeed knowingly, voluntarily, and intelligently made.

{¶25} The juvenile judge accepted the voluntary surrender of parental rights by the person reasonably demonstrated to be Mother. Mother never left her audio connection with the court as evidenced by the juvenile court's not having to re-admit her to the hearing via telephone. Mother's attorney verified that the phone number used by the parent to connect to the hearing belonged to

Mother. Neither Mother's attorney nor the guardian ad litem, both of whom had met and talked with Mother on prior occasions, indicated that the person purporting to be Mother on the phone did not sound like Mother. Mother answered when addressed by name by the juvenile judge. In addition, Mother referred to her boyfriend by name, the child's circumstances, and the foster mother with a familiarity evidencing that the speaker was in fact Mother.

{¶26} Although Mother implies that she was not the person who phoned in to the hearing, she does not allege on appeal that she or her attorney perpetrated a fraud upon the juvenile court. Neither does this Court recognize any evidence of such egregious conduct. Mother's assignment of error is overruled.

### III.

{¶27} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
CONCURRING.

{¶28} I concur with the majority's opinion, but I write separately to emphasize that a trial court should thoroughly verify the identity of a parent appearing remotely by audio, especially in circumstances of this magnitude. For example, the court could inquire of the parent as to the parent's address, birthdate, or other personal information, which could be verified by the court's own record.

{¶29} Nevertheless, in the absence of such additional inquiry, the record in this case demonstrates that the juvenile court reasonably verified Mother's identity and no objection was made as to the speaker on the phone. Under these circumstances, no error existed in the trial court's acceptance of Mother's relinquishment of her parental rights regarding E.S.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.