[Cite as *In re N.C.*, 2025-Ohio-2724.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

IN RE: N.C.

C.A. No.    2024CA0081-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    2022-06-DE-0073

DECISION AND JOURNAL ENTRY

Dated: August 4, 2025

---

FLAGG LANZINGER, Presiding Judge.

{¶1}    Appellants, D.C. ("Mother") and R.C. ("Father"), appeal from a judgment of the Medina County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their minor child in the permanent custody of Medina County Job and Family Services ("MCJFS").  This Court reverses and remands.

I.

{¶2}    Mother and Father are the biological parents of N.C., born July 11, 2009.  N.C. and his older sibling were removed from the parents' custody in a prior juvenile case in Summit County in 2011 because, among other things, the family was living in an unsafe and filthy home without adequate working utilities.  The specific details of that case are not included in the record, but it also involved allegations of sexual abuse by Father, and he was not permitted to have any contact with his children because he did not complete sex offender treatment.  Both children were

ultimately placed in the legal custody of maternal relatives ("Custodians"). At the time N.C. was placed in the legal custody of Custodians in 2013, he was three and a half years old.

{¶3} By June 2022, N.C.'s older sibling had reached the age of 18 and was no longer under the jurisdiction of the juvenile court. However, N.C. was still a juvenile, and Custodians had become "exhausted" meeting his daily needs because he required ongoing treatment for physical, mental health, and developmental disorders. Consequently, Custodians, who resided in Medina County, filed a complaint with the Medina County Juvenile Court seeking to surrender N.C. to the custody of MCJFS. Several days later, MCJFS also filed a complaint in this case, alleging that N.C. was a dependent child because Custodians were no longer able to care for him. MCJFS further alleged that it could not return the child to his parents' custody because their home was still cluttered and filthy and Father had never completed sex offender treatment.

{¶4} Both parents attended the adjudicatory hearing with counsel. By agreement of the parties, the juvenile court adjudicated N.C. a dependent child, placed him in the temporary custody of MCJFS, and adopted the case plan as an order of the court. During the first year of this case, Mother worked on the case plan, but Father did not. The trial court later granted a six-month extension of temporary custody to allow Mother more time to work on the case plan. By December 2023, however, a magistrate found after a review hearing that the parents had not made "adequate progress on case plan[.]"

{¶5} On January 10, 2024, MCJFS moved for permanent custody of N.C., asserting numerous alternative grounds under R.C. 2151.414(B)(1). The trial court scheduled the matter for a hearing. On June 17, 2024, the parties came to the courthouse, but Mother and Father did not appear in the courtroom or speak to the trial judge. Instead, their trial attorneys appeared on their behalf and informed the trial judge that the parents had agreed to waive their rights to a hearing

and consent to N.C. being placed in the permanent custody of MCJFS. The trial court briefly spoke to trial counsel for all parties. Counsel for MCJFS stated that it was the understanding of the agency that both parents were stipulating that permanent custody was in the best interest of the child "and that continued contact for Mother only would be under the discretion of the Agency[.]"

{¶6} The trial judge asked the parents' trial counsel whether they had "reviewed this with both of them and they are supportive of this?" The trial judge then added, "they are waiving their rights to a trial on the merits on the permanent custody motion" and consenting to permanent custody to MCJFS "based on these conditions with Mother having some continued contact with the child[.]" The parents' trial attorneys each stated that the parents had agreed to those terms. The trial judge did not speak to either parent or question trial counsel about whether the parents had knowingly, voluntarily, and intelligently entered into this agreement.

{¶7} The trial court accepted the stipulations stated by trial counsel and issued a final judgment entry that terminated parental rights and placed N.C. in the permanent custody of MCJFS. Mother and Father timely filed a joint, pro se notice of appeal. The trial court later appointed appellate counsel, who filed a brief on their behalf. The parents raise two assignments of error.

## II.

## **ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED BY RELYING UPON THE ORAL STIPULATION FROM THE RESPECTIVE MOTHER['S] AND FATHER['S] ATTORNEY THAT THE PARTIES WERE WAIVING THEIR RIGHTS TO CONTEST THE PERMANENT CUSTODY [MOTION] AND EACH WAS THROUGH THEIR RESPECTIVE ATTORNEY[] ENTERING [A] STIPULATION CONSENTING AND AGREEING TO THE COUNTY[']S PERMANENT CUSTODY [MOTION], THAT PARENTS[] WERE AWARE OF [THE] CONSEQUENCES OF THE COURT GRANTING PERMANENT CUSTODY, AS THE TRIAL COURT FAILED TO CONDUCT A FULL INQUIRY WITH THE PARENTS

THEMSELVES CONCERNING THAT STIPULATION AND THE REPURCUSIONS OF SAME.

{¶8} The parents argue that the trial court violated their due process rights by accepting their stipulation to permanent custody and waiver of their rights to a contested permanent custody hearing without personally speaking to them to ascertain whether they knowingly, voluntarily, and intelligently waived their rights. As this Court has previously emphasized, "there is no legislative guidance on the requirements for a voluntary surrender of parental rights in juvenile court where the child has been adjudicated neglected or dependent." *In re B.Y.*, 2017-Ohio-833, ¶ 10 (9th Dist.), citing *In re Miller*, 61 Ohio St.2d 184, 189 (1980); *Kozak v. Lutheran Children's Aid Soc.*, 164 Ohio St. 335, 341-342 (1955). "Consequently, this Court looks to decisional law to address this question." *In re B.Y.* at ¶ 10.

{¶9} Because it is well established in Ohio case law that parents have constitutionally protected rights to raise their children, "any action by the state that affects these parental rights must be conducted pursuant to procedures that are fundamentally fair." *Id*. at ¶ 12. Therefore, "a parent's surrender of parental rights must . . . be made with full knowledge of the parent's rights and the consequences that will follow, and be knowing, intelligent, and voluntary." *Id*. at ¶ 14.

{¶10} In *In re B.Y.*, this Court explicitly followed the reasoning of the Sixth Appellate District in *In re Terrence*, 2005-Ohio-3600, ¶ 88-89 (6th Dist.), which held that due process requires that when a parent is waiving the fundamental right to care for and have custody of a child, the trial court must have "a meaningful dialogue with the parent to be certain that the consent is truly voluntary." *In re B.Y.*, 2017-Ohio-833, at ¶ 20 (9th Dist.), quoting *In re Terrence* at ¶ 89. In *In re B.Y.*, the mother had completed a written stipulation form, and the trial judge personally addressed her to ascertain that she had no questions, was not under the influence of any substance,

and that no one had threatened her or promised her anything in exchange for her stipulation. 2017-Ohio-833, at ¶ 15 (9th Dist.).

{¶11} The mother argued on appeal that fundamental due process required that, "before accepting a waiver of parental rights, the court must ensure that a parent understands his or her rights and the consequences of such action." *Id*. at ¶ 17. This Court agreed with B.Y.'s mother that the trial judge's brief questioning of her had been too limited "to satisfy the requirements of fundamental due process" because it did not demonstrate that the mother's waiver was knowing, voluntary, and intelligent. *Id*. at ¶ 23. This Court emphasized that the trial judge had not explored whether the mother "understood the nature of the allegations against her[,] . . . the consequences of her stipulation[,]" the rights she was waiving, or the agency's burden in proving its case against her. *Id*. at ¶ 16. Of significance here, "[t]he judge did not explain that Mother would have no right to any future contact or relationship with the child." *Id*.

{¶12} This Court has continued to apply this reasoning that, before a juvenile court is authorized to accept the parents' waiver of a permanent custody hearing and stipulation to permanent custody of their child, the court must personally address them and have a "meaningful dialogue" to ascertain that they are knowingly, voluntarily, and intelligently waiving their rights. *See*, *e.g.*, *In re B.W*. 2018-Ohio-4544, ¶ 7-12 (9th Dist.); *In re E.S*., 2020-Ohio-6708, ¶ 17-26 (9th Dist.).

{¶13} In *In re B.W*., 2018-Ohio-4544, at ¶ 10 (9th Dist.), this Court held that the trial court had conducted a sufficient colloquy with the father before accepting his stipulation to permanent custody. Specifically, the trial judge questioned him "in detail about each of the rights that he was waiving, whether he understood those rights, and whether his waiver was completely voluntary." *Id*. The trial court questioned him further "to ascertain that [he] was not confused, intoxicated,

mentally impaired, or otherwise under any disability that prevented him from voluntarily waiving his rights[;]" and "that no one had promised him anything in exchange for his waiver of rights." *Id*. Although the father had noted that he would like to maintain contact with the child, the trial court ensured that the father understood that "an arrangement for continuing contact would be entirely at the discretion of B.W.'s foster family, that the trial court had no authority to enforce any such agreement, and that Father would lose all legal rights as the parent of B.W." *Id*. at ¶ 11.

{¶14} In *In re E.S.*, 2020-Ohio-6708, at ¶ 23-24 (9th Dist.), this Court again examined a parent's waiver of rights to determine whether it had been made knowingly, voluntarily, and intelligently. Although the trial judge spoke to the mother on the phone to accept her waiver because she failed to appear for the hearing, the judge had verified through several means that she was, in fact, speaking to the mother. This Court again held that the mother's due process rights were adequately protected by the meaningful dialogue conducted between the trial judge and the mother:

> . . . The judge explained all of Mother's hearing rights, including, but not limited to, her rights to present evidence and the testimony of witnesses; to subpoena witnesses; to testify or decline to testify on her own behalf; to hold CSB to its burden of proof by clear and convincing evidence and in compliance with the Ohio Rules of Evidence; and to appeal the trial court's judgment. The juvenile judge further explained the consequences of Mother's waiver of her rights, including, but not limited to, her forfeiture of the above rights; and the termination of her legal status as the child's mother, including the rights to visitation, to consent to adoption, and to determine the child's religious affiliation, as well as the obligation to pay child support. The judge clarified that the juvenile court could not make any guarantees regarding the adoption of the child, and that Mother would not receive any notice regarding any adoption proceedings in the probate court.
>
> After each explanation by the juvenile court, Mother asserted that she understood. In addition, Mother assured the judge that no one had threatened or promised her anything to persuade her to voluntarily surrender her parental rights, that she had had the opportunity to discuss her options fully with her attorney, that she was not under the influence of any drugs or alcohol, and that her ability to think clearly and make decisions was not being adversely affected by any medications she was or was not taking at the time. The judge specifically asked Mother if she believed that

she was waiving her rights and making the decision to relinquish her parental rights in a knowing, voluntary, and intelligent manner. Mother asserted that she was.

*In re E.S.*, 2020-Ohio-6708, at ¶ 23-24 (9th Dist.).

**{¶15}** The Third Appellate District has also explicitly followed the reasoning of *In re Terrence* that "fundamental due process requires that when a parent is waiving the fundamental right to care for and have custody of a child, the trial court must have a meaningful dialogue with that parent to be certain that the consent is truly voluntary. If a parent expresses uncertainty or misunderstandings about his or her decision to waive parental rights, the trial court's acceptance of the waiver is improper." (Internal citations omitted.) *In re C.C.*, 2013-Ohio-3195, ¶ 21 (3d Dist.). Other appellate districts have similarly reasoned that, for a parent to validly waive his or her right to a contested permanent custody hearing, the record must demonstrate that the parent made a knowing and voluntary waiver, with a full understanding of the specific rights being waived. *See, e.g., In re D.R.*, 2006-Ohio-3513, ¶ 12 (2d Dist.); *In re Rock Children*, 2005-Ohio-2572, ¶ 12-17 (5th Dist.) (relying on Juv.R. 29 rather than principles of due process).

**{¶16}** It is clear from the record in this appeal that the trial judge did not personally address either parent in this case to ascertain that they had knowingly, voluntarily, and intelligently agreed to permanent custody in this case. Even the representations made to the court by trial counsel failed to explain that the parents understood the rights they were waiving, the implications of permanent custody, or that their agreement was knowing, voluntary, and intelligent. In fact, as stated on the record, it appears that the parents' decision to surrender their parental rights may have been "based on" the condition that Mother would be permitted to have "some continued contact" with the child. That representation further undermined the lack of evidence that the parents had entered into a knowing, voluntary, and intelligent stipulation to permanent custody. *See In re E.S.*,

2020-Ohio-6708, at ¶ 23-24 (9th Dist.); *In re B.W.*, 2018-Ohio-4544, at ¶ 10 (9th Dist.); *In re D.R.*, 2006-Ohio-3513, at ¶ 14-17 (2d Dist.).

{¶17}  Given this Court's well-established precedent on this issue, as well as case law from other appellate districts, the trial court denied the parents' fundamental rights to due process when it cancelled the permanent custody hearing and accepted the parents' stipulation to permanent custody without conducting a "meaningful dialogue" with them to ascertain that they had knowingly, voluntarily, and intelligently agreed to surrender their child to the permanent custody of MCJFS.  The parents' first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

PARENTS[] RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BY ALLOWING AND FACILITATING THE TRIAL COURT TO ERR AND ABUSE ITS DISCRETION BY RELYING UPON THE ORAL STIPULATION FROM THE RESPECTIVE MOTHER['S] AND FATHER['S] ATTORNEY THAT THE PARTIES WERE WAIVING THEIR RIGHTS TO CONTEST THE PERMANENT CUSTODY [MOTION] AND EACH WAS THROUGH THEIR RESPECTIVE ATTORNEY[] ENTERING [A] STIPULATION CONSENTING AND AGREEING TO THE COUNTY[']S PERMANENT CUSTODY [MOTION], THAT PARENTS[] WERE AWARE OF [THE] CONSEQUENCES OF THE COURT GRANTING PERMANENT CUSTODY; THE TRIAL COURT FAILED TO CONDUCT A FULL INQUIRY WITH THE PARENTS THEMSELVES CONCERNING THAT STIPULATION AND THE REPURCUSIONS OF SAME, AND THAT THE RESPECTIVE ATTORNEYS WERE INEFFECTIVE BY NOT INSURING THIS.

{¶18}  The parents' second assignment of error is that their trial counsel was ineffective for failing to protect their due process rights.  This Court will not address this assignment of error because it has been rendered moot by the disposition of the first assignment of error.  *See* App.R. 12(A)(1)(c).

## III.

{¶19}  The parents' first assignment of error is sustained.  Their second assignment of error was not addressed because it is moot.  The judgment of the Medina County Court of Common

Pleas, Juvenile Division, is reversed and the cause is remanded for proceedings consistent with this decision.

Judgment reversed
and cause remanded.

___

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellants.

MELISSA L. ZAWADZKI, Attorney at Law, for Appellee.

MARK STOLARSKY, Guardian ad Litem.